**EDWARDS v. WALLACE.**

**No. 5777.**

Court of Appeal of Louisiana.
Second Circuit.

Dec. 9, 1938.

Rehearing Denied Jan. 10, 1939.

Writ of Certiorari and Review Denied
March 6, 1939.

M. C. Redmond, of Monroe, for appellant.

Cameron C. Minard, of Columbia, for appellee.

TALIAFERRO, Judge.

Plaintiff's right leg was wounded by a bullet fired from a revolver while he was lawfully in defendant's office, about the midnight hour of April 7, 1936. He sues to recover damages resulting from the trauma. He charges that defendant fired the shot that wounded him; that he did so without provocation or legal excuse, either deliberately or carelessly while in a state of voluntary alcoholic intoxication.

In his answer defendant denies that he shot · plaintiff and denies ownership of the weapon with which he was shot. He avers that the revolver belonged to some other member of the party of several who were then assembled in his office; that the weapon was either lying on a window sill or a table and was accidentally knocked to the floor, causing it to discharge and wound plaintiff. He further avers that he did not see the pistol fired nor does he know who fired it or caused it to be fired. However, he admits that during the evening and night of the "party, shots were fired into the air from time to time" by one or more of its members.

On motion of defendant, the case was tried with the intervention of a jury. A verdict of $300 was rendered against him. From this verdict and the judgment pursuant thereto, defendant prosecutes this appeal. Answering the appeal, plaintiff prays for a substantial increase in the award.

■ A careful study of the testimony upon which the jury acted leaves no doubt in our minds of the correctness of its finding on the primary issue of fact tendered. It was defendant's revolver from which the bullet· that injured plaintiff was fired and defendant fired it. We are clear in the belief that so far as plaintiff was concerned, the shooting was without malicious intent. The record is barren of any evidence to support such an implication. A drunken orgy for the night was being engaged in by several of defendant's friends in and about his office adjacent to his stock barn across the river from Columbia, Louisiana. He evinced a dislike for one of the guests and ordered him to leave. At the same time· he directed a colored boy to bring to him his revolver. To impress the unwelcome guest with the earnestness of the demand that he leave the premises, defendant fired three shots promiscuously inside the office. One of these entered plaintiff's leg.

Defendant testified positively that he did not fire the pistol. It belonged to him. He sent for it and after the shooting it was seen in a pocket of his overcoat hanging inside the office. No other pistol was there at the time, so far as the testimony discloses.

Plaintiff's case was made out by the direct testimony adduced in his behalf. It is further strengthened by defendant's own conduct and attitude immediately following the shooting. He summoned a physician from Columbia to render first aid to the wounded man. On the advice of this physician, he carried plaintiff to a sanitarium in Monroe, Louisiana, and paid personally all the bills and expenses incurred in treating him. On the fourth day after the shooting, while plaintiff was in the sanitarium suffering from the wound, he presented to him and insisted upon him signing a typewritten statement exonerating defendant from responsibility for his injury. Plaintiff did sign the paper without first reading its contents. He says that he signed it on the assurance of defendant that it would serve to prevent a grand jury investigation into the shooting affair. To that time plaintiff had not threatened any civil or criminal action against defendant. He was primarily concerned about recovery from his wound. He had not consulted anyone as regarding his rights against defendant. If defendant's conscience did not reprove him, why should he so hastily try to estop plaintiff from proceeding against him? If he did not fire the shot causing the injury, why should he so early resort to such unusual steps to prove his innocence? It appears to be a cause of the guilty fleeing when not pursued.

■ The bullet entered the right side of the fleshy part of the leg, lower one-third, ranged slightly downward and made its exit without injury to a bone. The medical testimony, however, convinces us that the bullet injured either the trunk tibial nerve or some of its minor branches. Tests made on plaintiff's foot over eight-

een months subsequent to the date of injury satisfied his attending physician that he had suffered a nerve injury. Outward physical manifestations of the nerve injury is that when walking there is a distinct "sling" of the right foot. The chances largely favor the permanency of this impairment.

Plaintiff was confined to the sanitarium for one week. He was incapacitated to perform manual labor, which he follows for a livelihood, for about three months. He usually earned $2 per day or more when working. It is not shown that the "sling" movement of the foot materially impairs his ability to work. It is, of course, an inconvenience and certainly reduces the functioning of the foot from its normal efficiency. For pain, suffering, loss of time and the permanent impairment of the foot, we do not think $300 adequate. $500 will more nearly compensate plaintiff than will the jury's award.

For the reasons herein assigned, the judgment appealed from is increased to Five Hundred ($500) Dollars, and as thus amended it is affirmed, with costs.